UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NANCY GLEIS, : | |
|     PLAINTIFF, : | |
| : | CIVIL ACTION NO.: |
| : | 3:11 CV663 (VLB) |
| : | |
| v. : | |
| : | |
| OFFICER JOHN BUEHLER, : | |
| SGT. SEAN COONEY, : | |
| CITY OF STAMFORD : | |
| AND RALPH K. WINTER, : | |
|     DEFENDANTS. : | APRIL 10, 2012 |

### MEMORANDUM OF DECISION DISMISSING PLAINTIFF'S COMPLAINT

This Court dismisses, *sua sponte*, the action brought by the Plaintiff, Nancy Gleis ("Gleis"), proceeding *pro se*, against the Defendants, Officer John Buehler ("Buehler"), Sergeant Sean Cooney ("Cooney"), the City of Stamford ("City") and the Honorable Ralph K. Winter ("Judge Winter") a judge for the United States Court of Appeals for the Second Circuit. Plaintiff filed a 42 U.S.C. Section 1983 suit against Defendants Buehler, Cooney, and the City in a prior litigation in the District of Connecticut. *See* Docket No. 3:04CV2217 (DFM). In the current action, Plaintiff seeks for this Court to reverse the judgment of the Second Circuit affirming the District Court's decision granting summary judgment in favor of Defendants in her prior lawsuit and remanding her prior lawsuit for trial before this Court. In addition, the Plaintiff alleges that Judge Winter acted outside of his jurisdictional authority, corrupted the judicial process and deprived United States citizens of due process in affirming the District

1

Court's decision.  For the reasons stated hereafter, the Plaintiff's action is dismissed as frivolous.

Background

On December 30, 2004, Plaintiff brought an action against Defendants Buehler, Cooney, and the City pursuant to Section 1983 alleging false arrest, malicious prosecution, violations of her due process rights under the federal constitution and the Connecticut constitution, conspiracy, and various state law claims.  See *Gleis v. Buehler,* Docket No. 3:04CV2217 (DFM) ("*Gleis I*").  On March 26, 2007, the *Gleis I* Court granted summary judgment in favor of Defendants on Plaintiff's federal law claims, denied Plaintiff's cross-motion for summary judgment and declined to exercise its supplemental jurisdiction on Plaintiff's state law claims.  See *Gleis I*, No.3:04CV2217(DFM), 2007 WL 926907 (D. Conn. March 26, 2007).   Plaintiff then moved the *Gleis I* Court for reconsideration of its order granting summary judgment in favor of Defendants.  The *Gleis I* Court issued a lengthy decision denying Plaintiff's motion for reconsideration.  See *Gleis I*, No.3:04CV2217(DFM), 2009 WL 3254496 (D.Conn. Oct. 6, 2009).

Plaintiff then appealed the *Gleis I* Court's decision to the Second Circuit. The Second Circuit affirmed the *Gleis I* Court's decision granting summary judgment in favor of Defendants.  See *Gleis v. Buehler*, 374 Fed.Appx. 218 (2d Cir. 2010).

On April 25, 2011, the Plaintiff filed the instant lawsuit before this Court. Plaintiff amended her complaint as of right on July 25, 2011.  See [Dkt. #14, First Amended Compl.].  Plaintiff then moved for an extension of time to file a second

2

amended complaint on September 19, 2011, on which the Court has not yet ruled. See [Dkt. #18].  Plaintiff attached her proposed second amended complaint to her motion for extension of time.  See [Dkt. #18, attach 1, Proposed Second Amended Compl.].  Since the Court has not issued a ruling denying Plaintiff leave to amend her complaint for futility, the Court will consider both Plaintiff's First Amended Complaint and her proposed Second Amended Complaint in its order dismissing the action as frivolous.  Both complaints contain the essentially the same allegations and seek this Court to reverse the Second Circuit's decision affirming the *Gleis I* Court's decision granting summary judgment in favor of Defendants and remand Plaintiff's prior lawsuit on her Section 1981 claims brought against Defendants Buehler, Cooney, and the City for trial before this Court.

On June 6, 2011, Plaintiff also moved to reopen her prior case in *Gleis I* pursuant to Fed. R. Civ. P. 60.  See [Docket No. 3:04CV2217, Dkt. #100].  On March 22, 2012, the *Gleis I* Court denied Plaintiff's motion to reopen on that basis that Plaintiff did not timely move to reopen and that the arguments she raised were litigated on summary judgment, on reconsideration and on appeal to the Second Circuit. *See* [Docket No. 3:04CV2217, Dkt. #123].

Factual Background

Since Plaintiff is asking this Court to overrule the decision of the Second Circuit and the *Gleis I* Court, Gleis asserts the same facts as she did in her prior lawsuit.  The following facts were alleged in Plaintiff's prior lawsuit.

On May 10, 2002, Gleis went to the Super Stop & Shop in Stamford, Connecticut.  [3:04CV2217 (DFM) Dkt. #45, Second Amended Complaint, ¶ 11.].

3

She parked in a "Customers With Infants" parking space to retrieve a package she had left at the store previously. [*Id.*]. She alleges that another driver, McKinley[1] approached her and began screaming obscenities and accused Gleis of parking illegally in the infant space. [*Id.* at ¶ 12]. Gleis went to get her package and drove out of the parking lot attempting to avoid McKinley and McKinley's daughter, Caitlin. [*Id.*]. McKinley called the Stamford Police from the Stop and Shop. [*Id.* at ¶ 13]. Later that night, the police, including Buehler, arrived at Gleis' home and spoke with her through the window because she refused to open the door. [*Id.* at ¶ 14]. Gleis refused to cooperate and the police officers left her home shortly after they arrived. [*Id.*].

Buehler then went to the McKinley's home and received an affidavit from her. [*Id.* at ¶ 15]. The affidavit alleged that Gleis had used obscene language in the presence of her child and had tried to run over her and her daughter Caitlin as they were crossing the street in the parking lot. [*Id.*].

On May 11, 2002, Gleis went to the Super Stop & Shop to see the assistant manager, who informed her that the parking lot contains two surveillance cameras. [*Id.* at ¶ 16]. While the store does not provide its customers with copies of the surveillance tapes, they always cooperate with the Stamford Police Department when requests are made to view or obtain the tapes. [*Id.*].

On May 12, 2002, Gleis unsuccessfully attempted to contact Cooney, who was Buehler's supervisor. [*Id.* at ¶ 17]. She prepared a statement with her version of the events, mentioning the surveillance tapes and the availability of

---

[1] McKinley and Caitlin are not originally named in the complaint, but for convenience, their names will be used here in the description.

4

another witness who saw the whole incident and faxed it to the police department.  [*Id.* at ¶ 17-18].  Cooney allegedly read the statement and gave a copy to Buehler, who also allegedly read the statement.  [*Id.* at ¶ 19].  Cooney did not instruct Buehler, or any other police officer, to view or obtain copies of the surveillance tapes.  [*Id.*].  On May 14, 2002, Gleis spoke with Cooney who said that there was no reason for her to come to the station since her fax was her statement and that "there is no summons or warrants to be served."  Gleis assumed that the matter had been dropped at this time.  [*Id.* at ¶ 20].  On May 21, 2002, a warrant was issued for Gleis's arrest, signed by Buehler and Cooney.  The application for the warrant did not contain information regarding the surveillance tapes.  [*Id.* at ¶ 21].  Although the warrant application stated that Buehler's affidavit and Gleis' fax to the police were both attached, only the affidavit was actually attached.  [*Id.* at ¶ 22].  On June 8, 2002, the surveillance tapes were routinely destroyed by Stop & Shop.  [*Id.* at ¶ 25].

On October 23, 2002, Gleis was arrested and taken to jail with a bail of $25,000.00.  She was charged with risk of injury to a child, attempted assault in the second degree and breach of peace.  [*Id.* at ¶ 28].

On July 1, 2003, Assistant State Attorney Michael Colombo allegedly told the judge that the surveillance tapes "never existed."  [*Id.* at ¶ 29].  Plaintiff alleges that he made this statement even though in his file, there was allegedly a memorandum, prepared by his investigator, that detailed the surveillance procedures of Stop & Shop.  [*Id.*].  Colombo allegedly continued this

5

misrepresentation in evidentiary hearings on October 30, 2003 and January 7, 2004. [[*Id.*].

### *Gleis I* summary judgment decision

In granting summary judgment in favor of Defendants, the *Gleis I* Court found that the Defendant police officers had probable cause for Gleis's arrest and rejected Plaintiff's argument that the "police officers lacked probable cause, because they did not obtain the allegedly exculpatory Stop & Shop videos." *Gleis I*, 2007 WL 926907 at *3. In coming to this conclusion, the *Gleis I* noted that although "[p]olice officers may not disregard plainly exculpatory evidence in their possession," "'an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause'" and that "'once an officer has probable cause, he or she is neither required nor allowed to continue investigating, sifting and weighing information.'" *Id.* (quoting *Panetta v. Crowley*, 460 F.3d 288, 295-96, 398 (2d Cir. 2006)). Since probable cause is a defense against a suit for false arrest and malicious prosecution, the Court granted summary judgment in favor of Defendants on those claims.

The *Gleis I* Court also rejected Plaintiff's argument that Defendants "violated her due process rights by failing to obtain the Stop & Shop videos before they were erased" concluding that "Second Circuit has repeatedly held that police officers have no duty to continue their investigation once they have probable cause for an arrest." *Id.* at *5. The *Gleis I* Court found that Gleis had failed to allege facts sufficiently supporting her conspiracy claim and dismissed her *Monell* claim against the City for failure to train because "there was no

6

misconduct by the defendant police officers." *Id.* at *5-6. Lastly, the *Gleis I* Court declined to exercise its supplemental jurisdiction over Gleis's state law claim and dismissed those claims without prejudice to refilling in state court. *Id.* at *6.

### *Gleis I* decision denying Plaintiff's motion for reconsideration

The *Gleis I* Court concluded that Plaintiff had failed to meet the strict standard for reconsideration and reiterated that "[a]n examination, of the arrest warrant reveals that it was supported by probable cause." *Gleis I,* 2007 WL 3254496 (D. Conn. Oct. 6, 2009). The *Gleis I* Court considered Plaintiff's argument that material information was omitted from the warrant affidavit including the existence of potentially exculpatory video tapes and found that even with Plaintiff's proposed corrections the affidavit supported a probable cause determination. *Id.* at *2-3. The *Gleis I* Court reiterated that probable cause could not be "eliminated simply because of the claimed existence of exculpatory evidence." *Id.* at *3. The *Gleis I* Court also indicated that the Defendants would be entitled to the protection of qualified immunity since there was arguable probable cause. *Id.* at *4.

### The Second Circuit's decision

Plaintiff appealed the *Gleis I* Court's decision to the Second Circuit and the appeal was heard by a panel of judges which included the Honorable Ralph K. Winter, the Honorable Debra Ann Livingston, and the Honorable Lewis A. Kaplan of the Southern District of New York sitting by designation on the Second

Circuit.² The Second Circuit affirmed the *Gleis I* Court's decision granting summary judgment in favor of defendants and rejected Plaintiff's argument that the arrest warrant "was not supported by probable cause because Officer Buehler knowingly or recklessly omitted any reference to the surveillance tapes in the affidavit he filed with the warrant application and that this omission was 'necessary to the finding of probable cause.'" *Gleis v. Buehler*, 374 Fed. Appx. 218, 220 (2d Cir. 2010). The Second Circuit found that "Buehler had probable cause to arrest Gleis based on McKinley's sworn statement describing the incident. The substance of the fax Gleis sent to the Stamford Police Department-which merely asserted that surveillance tapes existed-simply constituted a competing version of the relevant events, which Defendants were required neither to consider nor investigate before seeking an arrest warrant." *Id.*

The Second Circuit also concluded that "that the district court correctly granted summary judgment to the Defendants on Gleis's remaining claims" and noted that "[t]o the extent Gleis argues that Defendants violated her due process rights by unreasonably delaying the execution of the warrant, it is well established that 'to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time.'" *Id.* (quoting *United States v. Lovasco*, 431 U.S. 791 (1977)).

---

² Plaintiff has only named Judge Winter as a Defendant in the instant action and not Judge Livingston or Judge Kaplan.

8

**Legal Standard**

Under 28 U.S.C. § 1915 (e)(2), the Court is expressly mandated to dismiss *sua sponte* an action filed by a pro se plaintiff proceeding *in forma pauperis* if the Court determines that the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915 (e)(2).  "An action is frivolous if it lacks an arguable basis in law or fact — i.e., where it is 'based on an indisputably meritless legal theory' or presents 'factual contentions [which] are clearly baseless.'"  *Scanlon v. Vermont*, 423 Fed. Appx. 78, 79 (2d Cir. 2011) (citing *Nietzke v. Williams*, 490 U.S. 319, 327 (1989)).

The Second Circuit has extended the grant of authority in 28 U.S.C. § 1915 (e)(2) beyond *in forma pauperis* proceedings holding that "district courts may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee, just as the Court of Appeals may dismiss frivolous matters in like circumstances."  *Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000).  The Second Circuit explained that "as courts of first instance, district courts are especially likely to be exposed to frivolous actions, and thus have an even greater need for inherent authority to dismiss such actions quickly in order to preserve scarce judicial resources."  *Id.*  Accordingly, the Court has the authority to *sua sponte* dismiss the instant action even though the Plaintiff has paid the required filing fee.

**Analysis**

Here, both of Plaintiff's complaints are rife with Plaintiff's legal arguments that the Second Circuit's and *Gleis I* Court's decisions in her prior litigation were erroneously decided. For example, in the proposed Second Amended Complaint, Plaintiff alleges that while the *Gleis I* Court "had the cross-motions for summary judgment in case number 3:04cv2217, but had not found even one case to support her desire to grant summary judgment to the defendant police officers." [Dkt. #18, Attach 1, Proposed Second Amended Compl. at ¶205]. Plaintiff further alleges that Second Circuit's decision was erroneous because Judge Winter "falsely attributed his language [in the Second Circuit's decision] to page 372 of the 1989 *Krause* decision. No where in the *Krause* decision does that language appear, nor had it appeared in any decision of any court of this country," and that "[t]his was not an inadvertent error on the part of Judge Winter." [*Id.* at ¶¶206-07]. Needless to say, neither version of the complaint satisfies Federal Rule of Civil Procedure 8's requirement that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Further, it is inappropriate to include legal argument and briefing within a complaint as Plaintiff has done here.

In the proposed Second Amended Complaint, plaintiff seeks "judgment against the defendants, and each of them, jointly and severally, for compensatory damages, as above described, punitive damages, attorney fees, costs, interest, sanctions for filing a frivolous defense in case number 3:04cv2217, and such further relief as this court deems just and proper" and "requests trial by jury as

soon as possible." [*Id.* at p. 44-45]. In the First Amended Complaint, Plaintiff also sought judgment against the defendants and trial by jury. [Dkt. #14, First Amended Compl. at p. 19]. It appears that Plaintiff is seeking an order of this Court reversing the Second Circuit's decision.

This Court does not have the authority to reverse the judgment of the Second Circuit. A district court is under a duty to follow an appellate court ruling. *See U.S. v. Basciano*, No.10-3548, 2012 WL 493401, at *3 (2d Cir. 2012) (citing *United States v. Cirami*, 563 F.2d 26, 32 (2d Cir. 1977)). Under the law-of-the-case doctrine, "the trial court is barred from reconsidering or modifying any of its prior decisions that have been ruled on by the court of appeals." *U.S. v. Uccio*, 940 F.2d 753, 757 (2d Cir. 1991). In addition, if the Plaintiff disagreed with the Second Circuit's decision in her prior lawsuit her only recourse was to petition the Supreme Court for writ of certiorari. *See In re D.A. Elia Const. Corp.*, Nos.07-cv-754, 08-cv-103, 2009 WL 704386, at *4 (W.D.N.Y. March 16, 2009) ("If [plaintiff] was dissatisfied with the result that [its appeal] received in the Second Circuit, its only recourse was to petition for rehearing or to petition for certiorari to the United States Supreme Court."). Therefore this Court is barred from reconsidering or modifying the Second Circuit's decision in Plaintiff's prior lawsuit.

A litigant who disagrees with the outcome of a prior lawsuit is not entitled to a second bite at the apple by filing a subsequent lawsuit in another District Court either seeking reversal of the outcome of the first lawsuit or seeking to relitigate the same exact claims all over again. *See Basso v. Jacoby*, 166 F.3d 1199 (2d Cir. 1998) (finding that plaintiff "could have attacked the bankruptcy

11

court's judgment by appeal; having failed to do so, she cannot now relitigate it through new lawsuits"). The old adage "if at first you don't succeed, try try again" is not applicable to our justice system. *See Manwani v. Brunelle*, 99 F.3d 400, 401 (2d Cir. 1995) (finding that the district court did not abuse its discretion in dismissing complaint that sought to relitigate several prior lawsuits brought by the plaintiff "in state and federal courts, and to reargue claims that have already been before this Court two times;" nor did the district court abuse its discretion in awarding Rule 11 sanctions "given [plaintiff's] history of frivolous and vexatious litigation."); *County of Suffolk v. Stone & Webster Engineering Corp.*, 106 F.3d 1112, 1117 (2d Cir. 1997) (Under the law-of-the-case doctrine, "a decision made at a previous stage of litigation, which could have been challenged in the ensuing appeal but was not, becomes the law of the case; the parties are deemed to have waived the right to challenge that decision, for '[i]t would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost.' Driven by considerations of fairness to the parties, judicial economy, and the societal interest in finality, the law-of-the-case doctrine 'applies ... to everything decided by necessary implication' in the first appeal.") (quoting *Fogel v. Chestnutt*, 668 F.2d 100, 108-09 (2d Cir. 1997), cert. denied, 459 U.S. 828 (1982)).

Further, to the extent that Plaintiff is seeking to re-litigate the same claims that were the subject of her prior lawsuit against Defendants Buehler, Cooney, and the City those claims are barred by the doctrine of res judicata. *See Lewal v. Wiley*, 29 Fed.Appx. 26, 27 (2d Cir. 2002) ("The majority of the allegations against

12

Tippy related to events that occurred in 1992. To the extent that Lewal is attempting to relitigate claims against Tippy that had been resolved in a previous lawsuit, he is barred by the doctrine of res judicata. As res judicata claims are properly raised on a motion to dismiss, we may dispose of precluded claims under 28 U.S.C. § 1915(e)(2)(B)(ii).") (citations omitted).

Although it does not appear from the face of either complaint that Plaintiff is asserting any new claims stemming from her arrest in 2002 or the prosecution of her criminal case in 2003 that were not the subject of her prior lawsuit, the Court notes that even if Plaintiff is attempting to raise new claims such claims would be barred by Section 1983's three year statute of limitations and Connecticut's three year limitations period for tort actions. *See Barile v. City of Hartford*, 264 Fed. Appx. 91 (2d Cir. 2008) (In Connecticut, a plaintiff must bring his § 1983 claim within three years of the date his claim accrues); Conn. Gen. Stat. §52-577 (setting three-year limitations period for tort actions in Connecticut). Assuming that Plaintiff had alleged new claims that were not the subject of her prior lawsuit, more than 3 years has elapsed since the date any such claim would have accrued from her arrest in 2002 or the prosecution of her criminal case in 2003 and therefore would also be barred by the statute of limitations.

Further, since all the claims Plaintiff brings against Judge Winter are based solely on acts performed by Judge Winter in his judicial capacity such claims are barred by the doctrine of judicial immunity. *See McCluskey v. New York State Unified Court System*, 442 Fed. Appx. 586, 587 (2d Cir. 2011) (finding that Plaintiff's claim that state courts and judges violated Plaintiff's Fourteenth

13

Amendment rights to due process and equal protection by ruling against them were barred by the doctrine of judicial immunity"); *Bliven v. Hung*, 579 F.3d 204, 209 (2d Cir. 2009) ("judicial immunity is conferred in order to insure that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions without apprehension of personal consequences to himself,  Thus, even allegations of bad faith or malice cannot overcome judicial immunity.") (internal quotation marks and citation omitted).

Although legal arguments are not properly included in a complaint, the Court notes that Plaintiff in both versions of her complaint makes the legal argument that Judge Winter is not entitled to judicial immunity "because he was not acting within his jurisdictional authority when he began writing and disseminating, via the internet, material intended to deceive and corrupt the judicial process." *See* [Dkt. #14, First Amended Comp. at ¶12].  Plaintiff also appears to argue in her complaints that pursuant to *Stump v. Sparkman*, 435 U.S. 349 (1978) that Judge Winter was not performing "judicial acts" since he was acting in a legislative capacity by making up language and falsely attributing that language to another Second Circuit case. *See* [*Id.* at ¶ 22].

It is undeniable that Judge Winter as member of the panel of the Second Circuit Court of Appeals that heard and ruled on Plaintiff's appeal was performing a judicial act.  Moreover as the Supreme Court held in *Stump,* "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only  when he has acted in the "clear absence of all jurisdiction." *Stump*, 435 U.S.

at 357. It is beyond doubt that the Second Circuit had jurisdiction to hear the appeal of Plaintiff's prior lawsuit from the District of Connecticut and therefore Judge Winter was not acting in the clear absence of all jurisdiction. As the Supreme Court explained "the distinction between lack of jurisdiction and excess of jurisdiction [can be illustrated] with the following examples: if a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune." *Stump*, 435 U.S. at 357. The United States Court of Appeals for the Second Circuit has jurisdiction to hear and rule on appeals from decisions by District Courts in the District of Connecticut and therefore Judge Winter as a Judge for the United States Court of Appeals for the Second Circuit was acting within his jurisdiction. Here, Plaintiff's allegations are that Judge Winter's action in affirming the *Gleis I* Court's grant of summary judgment was done in error, maliciously and in excess of his authority and therefore such claims are barred by the doctrine of judicial immunity.

For all the reasons stated above, Plaintiff's action is frivolous because it lacks an arguable basis in law and fact and is based on an indisputably meritless legal theory. In addition, Plaintiff would not be able to cure the defects in her complaints through further amendment. The Court notes that "[l]eave to amend may be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim." *AEP Energy Serv. Gas Holding Co.*, 626 F.3d 699 , 726

(2d Cir. 2010).  Where "there is no merit in the proposed amendments, leave to amend should be denied."  *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990).  "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  *Lucente v. Int'l Bus. Machin. Corp.*, 310 F.3d 243, 257 (2d Cir. 2002).  Here since all of Plaintiff's claims are bared by either res judicata, judicial immunity, statute of limitations, the law-of-the-case doctrine and since Plaintiff seeks a remedy which this Court has no authority to grant, any amendment would be futile.

### Conclusion

While the Court understands that the Plaintiff believes that her arrest and prosecution could have been avoided if only the police had given her the benefit of the doubt and conducted a more thorough investigation and that the Second Circuit failed to redress this wrong.  However, the law does not provide a remedy for every injustice.  Unfortunately, the injustice perceived by the Plaintiff has no remedy which this Court can grant.  For all the foregoing reasons, the Plaintiff's complaint is dismissed with prejudice.  The Clerk is directed to close the file.

                                                IT IS SO ORDERED.


                                                /s/
                                        Hon. Vanessa L. Bryant
                                        United States District Judge

Dated at Hartford, Connecticut: April 10, 2012